IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| Wendy Guida, in her capacity as mother to and as Trustee for the Next of Kin of ANDREW STRATTON, Deceased,<br><br>     Plaintiff,<br><br>vs.<br><br>Elliott Schmidt, in his individual capacity as a Cass County Deputy Sheriff; Karl Boehm in his individual capacity and as a Cass County Deputy Sheriff; Mike McKnelly in his individual capacity as a Cass County Deputy Sheriff; Cass County, Nebraska and the City of Plattsmouth.<br><br>     Defendants. | CASE NO.<br><br>**COMPLAINT**<br><br>*Jury Trial Demanded under*<br>*Fed. R. Civ. P. 38 (b)* |

For her Complaint, Plaintiff Wendy Guida in her capacity as the bereaved mother of, and as the trustee for the next of kin of decedent Andrew Stratton, by and through her attorney, Joseph L. Howard, respectfully states and alleges as follows:

## Introduction

1. This complaint arises out of Andrew Stratton's February 13, 2022 killing, occurring at or about 10:30- 10:45 P.M. at 23418 Alvo Road in the City of Alvo, Cass County, Nebraska.

2. This cause of action is for money damages brought pursuant to 42 U.S.C. §1983 to redress the deprivation under color of state law of Andrew Stratton's established rights has secured by the Fourth and Fourteenth Amendments to the United States Constitution against (1) Defendants Elliot Smith ("Smith"), Karl Boehm ("Boehm"),

and Mike McKnelly ("McKnelly") in their respective capacities as duly certified law enforcement officers employed by the Cass County Sheriff's Department (collectively, the "Defendant Deputies"), for their respective violation of Mr. Stratton's right to be free from the use of excessive force and deadly force; and (2) Defendant Cass County, Nebraska "Cass County" or the "County") for its unconstitutional policies, customs and or practices.

## Jurisdiction and Venue

3. This Court has jurisdiction over federal issues pursuant to 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. §§ 1983, 1988.

4. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) because all incidents and events, and occurrences giving rise to this action occurred in the District of Nebraska. Moreover, upon information and belief, all of the parties reside within this judicial district.

## The Parties

5. All times relevant hereto and until the time of his death on February 13, 2022, Plaintiff's deceased son Andrew Stratton was a citizen of the United States and the City of Alvo within Cass County, State of Nebraska.

6. Plaintiff Wendy Guida ("Guida") resides in Monkey Island, Oklahoma and is acting in her individual capacity as Stratton's bereaved mother as well as the Trustee for Stratton's Next of Kin.

7. Mr. Stratton is survived by Wendy Guida and his father Gregg Stratton.

8.  Cass County, Nebraska is and was at all times material hereto a Political Subdivision of the State of Nebraska, organized and existing under and by virtue of the laws of Nebraska.

9.  The Cass County Sheriff's Department ("CCSD") is and was at all times material hereto a Nebraska Agency, providing the means through which the County fulfills its policing functions.

10. Upon information and belief, Defendant Schmidt is and was at all times material hereto a citizen of the United States and the State of Nebraska.

11. Schmidt was at all times material hereto employed by the CCSD as a duly appointed and sworn CCSD deputy, and was acting in his individual capacity and/or under color of state law, and within the scope of his employment.

12. Upon information and belief, Defendant Boehm is and was at all times material hereto a citizen of the United States and the State of Nebraska.

13. Boehm was at all times material hereto employed by the CCSD as a duly appointed and sworn CCSD deputy, and was acting in his individual capacity and/or under color of state law, and within the scope of his employment.

14. Upon information and belief, Defendant McKnelly is and was at all times material hereto a citizen of the United States and the State of Nebraska.

15. McKnelly was at all times material hereto employed by the CCSD as a duly appointed and sworn CCSD deputy, and was acting in his individual capacity and/or under color of state law, and within the scope of his employment.

**Factual Allegations**

16. On the evening of February 13, 2022, Andrew Stratton was shot and killed by CCSD deputies.

17. Andrew Stratton was a 34-year-old man known to the CCSD due to his history of mental health related difficulties, including but not limited to paranoid schizophrenia.

18. Stratton lived with his father Gregg Stratton, in the basement of his father's house located at 23418 Alvo Road in the City of Alvo, Cass County, Nebraska.

19. Due to Covid related issues, Stratton had recently been turned away from a mental health appointment and on the night in question was suffering from a paranoid schizophrenic manic episode.

20. On the evening in question, Stratton and his father Gregg gotten to an argument at their home in Alvo and Stratton physically struck his father Gregg.

21. Gregg left Stratton alone in the residence as Stratton lived in the basement and he drove to his mother's house in Greenwood, Nebraska.

22. At his mother's house, Gregg Stratton called 911 and explained that his son had mental health issues, then asked for assistance in deescalating, and specifically mentioned that he was concerned that the responding deputies would shoot his son.

23. The 911 operator assured Gregg Stratton that they would not shoot his son.

24. The 911 operator did not call a mental health professional, but rather notified the CCSD.

25. Two CCSD deputies responded, Schmidt and Sgt. Karl Boehm.

4

26. Schmidt had one month prior returned from a year-long deployment in the Middle East, where he had served in the military, performing law enforcement operations in the country of Jordan.

27. Prior to his deployment in the Middle East, Schmidt had been with the CCSD for only seven (7) months.

28. Prior to his employment with the CCSD, Schmidt had been fired from the Nebraska State Patrol, only slightly get a year after graduating from the Nebraska State Patrol Academy.

29. Schmidt is also a military veteran of ten (10) years, with specialized hand-to-hand combat experience.

30. Schmidt and Boehm initially met with Gregg Stratton at his mother's house in Greenwood, Nebraska at or about 9:30 PM.

31. There, Gregg Stratton described the altercation between he and his son, and emphasized his son's diagnosis of paranoid schizophrenia.

32. Gregg Stratton articulated to the deputies that Stratton had not been taking his prescribed medication.

33. Gregg Stratton sought an emergency protective custody placement for his son Andrew Stratton.

34. Gregg Stratton advised the officers that his son was "out of control."

35. Neither Deputy sought to involve a social worker, therapist or health care professional trained to assist and de-escalate such mental health crises.

36. When asked by the deputies, Gregg Stratton advised that Stratton may have access to a bow and arrow.

37. Schmidt and Boehm traveled to Stratton's house in Alvo.

38. There, Schmidt and Boehm received no response after knocking on Stratton's front door.

39. Boehm, as Schmidt's supervisor, elected not to call a captain to the scene.

40. In the alternative, they summoned McKnelly to gather Gregg Stratton, bring them to the house, and get his permission to enter the home.

41. The deputies intended to enter the home and arrest Stratton for third-degree misdemeanor assault.

42. Schmidt devised a plan wherein they would enter the home in a tactical "T" formation.

43. Schmidt went to his vehicle and armed himself with his own personal M4 assault rifle.

44. Schmidt and his assault rifle would lead a way and Boehm was to follow equipped with a Taser, and McKnelly with his service pistol.

45. After entering the residence, Schmidt yelled down to Stratton who was in the basement.

46. Stratton yelled a reply, which clearly indicated a confused mental state.

47. Stratton told the officers not to come downstairs, again, where he was in the basement.

48. Stratton yelled to the Defendant Deputies that he was the man who killed Osama bin Laden.

49. Stratton yelled to the Defendant Deputies that he had a "nuke."

50. Stratton yelled a number of other clearly confused and aggravated warnings not to come downstairs.

51. The Defendant Deputies negotiated with Stratton for only six (6) to seven (7) minutes, before deciding to proceed into the basement, weapons ready to fire.

52. The Defendant Deputies were simultaneously aware that the Nebraska State Patrol was enroute and would soon arrive, but unilaterally decided to escalate the situation by storming the basement.

53. The Defendant Deputies were not equipped with any ballistic shields, pepper ball launchers or other less lethal projectiles, as none were available to said Deputies.

54. Upon information and belief, no one was in danger until the Defendant deputies put themselves in the basement.

55. The Defendant Deputies themselves escalated the interaction with Stratton by proceeding down into the basement with their weapons drawn.

56. The lights in the basement were off, and as the Defendant Deputies proceeded down with flashlights into the basement, visibility was still difficult.

57. Despite not being able to see well, the Defendant Deputies decided to force a physical encounter with Stratton, who they were advised may have been armed with a bow and arrow.

58. Defendant Deputies failed to follow a de-escalation procedure(s).

59. At the time the deputies moved on Stratton, they knew that Stratton was a paranoid schizophrenic and that he was off of his medication.

60. Upon information and belief, the Defendant Deputies did not have in place or did not follow a standard operating procedure on how to handle a mentally ill person, with a history of violence, who was clearly in a manic state of mind.

61. Schmidt made the decision to force a confrontation with Stratton, knowing that:

    a.   Stratton was mentally ill and was verbalizing signs that he was in a manic condition and was threatening retaliation if the deputies entered his home;

    b.  that additional support was soon coming from the Nebraska State Patrol;

    c.   that the lights were off in the basement where Stratton was located;

    d.  that Stratton may or may not be armed with a bow and arrow; and

    e.  that no immediate threat existed to any party.

62. Upon information and belief, Deputies are taught to shoot until the threat is gone

63. In this case, it is believed that Schmidt fired nine (9) shots at Stratton.

64. Upon information and belief, the Deputies had been provided no training on dealing with citizens experiencing mental health episodes to include but not limited to schizophrenic manic episodes.

65. Upon information and belief, the Deputies had no training on mental health crisis intervention or willfully decided to ignore said training.

66. Upon information and belief, the Cass County Sheriffs have had situations where they bring therapists in to help alleviate situations. In the case at bar, no crisis intervention therapists were called.

67. Upon information and belief, there was no standard operating procedure in place by Cass County to guide the Defendant Deputies in the situation they faced the evening of February 13, 2022.

68. Stratton in those 7 minutes of negotiation, provided sufficient information to the deputies to put them on notice that Stratton was in a manic state.

69. Stratton's autopsy determined that Stratton's cause of death were gunshot wounds and noted two (2) rounds and multiple bullet fragments in his body and specifically his abdomen.

70. A grand jury investigation was held in December 2022, and the 500+ page transcript thereof, was made available for review in the spring of 2023.

71. The transcript provided information previously undisclosed and unknown to Wendy Guida, specifically information which is the basis for this Complaint.

72. The Grand Jury voted 14 – 2 not to indict Deputy Schmidt.

73. Deputy Schmidt testified that it was his belief that Stratton was trying to kill him, and thus Schmidt had no choice but to shoot Stratton.

74. Schmidt testified that he believed Stratton was drawing a bow and arrow which necessitated and justified shooting Stratton.

75. Schmidt testified that the resources available at the time he shot and killed Stratton limited his options and that due to those limited resources, he would not have done anything differently.

76. Schmidt testified a pepper ball gun, a 40 mm less lethal launcher or a ballistic shield, "would have made a difference."

77. Upon information and belief, Schmidt's testimony amounted to an admission that CCSD had improperly trained him to handle the situation at night and CCSD had not provided him with nonlethal weaponry.

**COUNT I - 42 U.S.C. §1983 – FOURTH AMEMDMENT VIOLATIONS**
*Plaintiff v. Schmidt, Boehm, and McKnelly, Individually and in their Official Capacities*

78. Plaintiff incorporates and realleges all preceding paragraphs as though fully pleaded herein.

79. The conduct by the deputies identified in this count and described herein constituted excessive and deadly force in violation of the 4th Amendment of the United States Constitution, and clearly established law.

80. At all times material hereto, defendants Schmidt, Boehm, and McKnelly were acting under color of state law, as agents of CCSD, and within their scope of their employment and authority as duly certified law enforcement deputy sheriffs of County of Cass, Nebraska.

81. At all times material hereto, Boehm was acting in a supervisory and directly participated in violating Stratton's federal rights. Defendant Schmidt is therefore liable in both his individual and supervisory capacities.

82. At all material times, Schmidt, Boehm and McKnelly knew that Stratton was mentally unstable, was a paranoid schizophrenic, and as the interaction progressed, were aware that he was acting and speaking irrationally and was clearly in a manic state.

83. At all material times, Schmidt, Boehm and McKnelly failed to employ any mental health crisis intervention techniques, call trained professionals, or deescalate in any fashion.

84. At all material times, Schmidt, Boehm and McKnelly failed to employ peaceful standoff negotiation techniques.

10

85. At all material times, Schmidt, Boehm and McKnelly failed to utilize nonlethal means to subdue Stratton.

86. It was objectively unreasonable for Schmidt, Boehm and McKnelly to force a violent confrontation with Stratton while he was experiencing a mental health crisis.

87. Schmidt, Boehm and McKnelly created a situation wherein Schmidt determined it was necessary to shoot Stratton nine (9) times.

88. Prior to entering the house to confront Stratton, Schmidt, Boehm and McKnelly were in no threat of harm.

89. Prior to entering the house to confront Stratton, no one was in threat of harm.

90. None of the Defendant Deputies ever had a reasonable fear of imminent bodily harm, nor did they have a reasonable belief that Stratton was a threat to himself.

91. It was a violation of Stratton's Fourth and Fourteenth Amendment Rights for Schmidt, Boehm and McKnelly not to render mental health aide prior to forcing a violent confrontation.

92. The Defendant Deputies had a duty to intervene on behalf of Stratton, specifically to stop the violent confrontation before it happened, to employee negotiation techniques, to employ mental health de-escalation techniques, to use non-lethal means to subdue Stratton, to wait for properly trained Nebraska State Patrol Officers, to negotiate properly in a standoff situation, and use violent force as a last resort.

93. It was a violation of Fourth and Fourteenth Amendment Rights for Schmidt, Boehm and McKnelly to use unjustified, excessive, and illegal deadly use of force.

94. As a result of Schmidt, Boehm and McKnelly's unjustified, excessive, illegal, and deadly use of force, Stratton experienced conscious pain and suffering.

11

95. As a result of Schmidt, Boehm and McKnelly's unjustified, excessive, illegal, and deadly use of force, Stratton experienced conscious pain and suffering.

96. As a result of Schmidt, Boehm and McKnelly's unjustified, excessive, illegal, and deadly use of force, Stratton died.

97. As a direct and proximate result of the acts and omissions described herein, Stratton suffered compensatory and special damages as defined under federal common law and in an amount to be determined by a jury.

98. Punitive damages are available against the defendant deputies and are hereby claimed as a matter of federal common law.

99. Plaintiff is entitled to recovery of costs, including reasonable attorney fees pursuant to 42 U.S.C. §1988.

100.    As a direct and proximate result of these wrongful acts and omissions, Wendy Guida, as the mother of Stratton has suffered pecuniary loss, including medical and funeral expenses, loss of aid, counsel, guidance, advice, assistance, protection, and support in an amount to be determined by a jury.

### COUNT II – 42 U.S.C. §1983 – Monnell Liability
*Plaintiff v. Cass County, Nebraska*

101.    Plaintiff hereby incorporates and realleges all preceding paragraphs as though fully pleaded herein.

102.    Cass County, Nebraska has final policymaking authority with regard to establishing written policies and training programs governing the conduct of the CCSD.

103.    Cass County Nebraska reviews and approves the written policies and training
governing the conduct of CCSD deputies.

104.    The written policies and training established and/or approved by Cass County
constitute the official policy of the County and were the moving force behind and
which caused Plaintiff's injuries and death.

105.    Cass County had knowledge of CCSD's unconstitutional patterns and practices
and knowledge that the same gave rise to risk of violations of citizens federal rights

106.    Cass County made a deliberate and/or conscious decision to disregard the lack of
training, lack of nonlethal uses of force and knew the risk of harm that would result
from the failure to train and properly equip its deputies, and was deliberately
indifferent to its failure.

107.    Cass County made a deliberate and conscious choice to employ Schmidt who was
clearly unfit to serve as a Deputy Sheriff.

108.    Cass County knew of Schmidt's "checkered past" has he was fired from the
Nebraska State Patrol less than a year after graduating the academy.

109.    Cass County made a deliberate and conscious choice to place a seasoned military
warrior, who is trained to kill, into a civilian population without the proper training
and without the proper non-lethal weaponry.

110.    On or prior to February 13, 2022, Cass County, with deliberate indifference to the
rights of citizens suffering from mental health illnesses, tolerated, permitted, failed to
correct, promoted or ratified a number of customs, patterns, or practices that failed to
provide for the safety of those with mental health, specifically those suffering from
schizophrenic manic episodes.

13

111.    On or prior to February 13, 2022, Cass County with deliberate indifference to the rights of citizens suffering from mental health illnesses, tolerated, permitted, failed to correct, promoted or ratified a number of customs, patterns, or practices that condoned and required deputies to turn a blind eye to and failed to intervene with the use of excessive force by CCSD deputies.

112.    On or prior to February 13, 2022, Cass County with deliberate indifference to the rights of citizens suffering from mental health illnesses, permitted, failed to correct, promoted, or ratified a number of customs, patterns, or practices that shall be further identified in discovery.

113.    As a direct and proximate result of the acts and omissions described herein, Stratton suffered compensatory and special damages as defined under federal common law and in an amount to be determined by jury.

114.    Plaintiff is entitled to recovery of costs, including reasonable attorney fees, under 42 U.S.C. §1988.

115.    As a direct and proximate result of these wrongful acts and omissions, Wendy guide as Stratton's mother and representative of Stratton's next of kin, has suffered pecuniary loss, including funeral expenses, loss of aid, counsel, guidance, advice, assistance, protection, and support in an amount to be determined by jury.

**COUNT III – 42 U.S.C. §1983 – Canton Liability**
*Plaintiff v. Cass County, Nebraska*

116.    Plaintiff hereby incorporates and realleges all preceding paragraphs as though fully pleaded herein.

117.   Cass County failed to properly train or modified's training to defendant deputies and its other deputies, including but not limited to, matters related to the reasonable and appropriate use of force when engaging with those suffering from mental health episodes, during investigations, arrests and intervention in the excessive use of force by fellow officers.

118.   Cass County was aware of a need for more and different training related to peaceful de-escalation of mental health crises, negotiation tactics and procedures with those citizens suffering from psychotic episodes including but not limited to manic episodes brought on by schizophrenia.

119.   Cass County was aware that its deputies were significantly lacking in specific training to assist those citizens suffering from mental health illnesses.

120.   Cass County was aware that its deputies were significantly deprived of non-lethal tools and weapons designed to de-escalate mental health crises.

121.   With deliberate indifference to the rights of citizens, Cass County failed to provide adequate training to its officers in regards to mental health crises intervention.

122.   Cass County made a deliberate and conscious choice to employ Schmidt who was clearly unfit to serve as a Deputy Sheriff.

123.   Cass County knew of Schmidt's "checkered past" has he was fired from the Nebraska State Patrol less than a year after graduating the academy.

124.   Cass County made a deliberate and conscious choice to place a seasoned military warrior, who is trained to kill, into a civilian population without the proper training and without the proper non-lethal weaponry.

125.   With deliberate indifference to the rights of citizens, Cass County failed to provide its deputies with nonlethal weaponry designed to de-escalate mental health crisis.

126.   Cass County was aware that deprivation of the constitutional rights of citizens was likely to result from its lack of training and its failure to equip its deputies with nonlethal weapons designed to de-escalate mental health crises.

127.   As such, Cass County was deliberately indifferent and exhibited reckless disregard with respect to the potential violation of constitutional rights

128.   The failure to train and or appropriately equip its deputies constituted official Cass County policies, practices, or customs.

129.   Cass County's failure to train and equip its deputies was behind the acts and omissions the Defendant Deputies made toward Stratton.

130.   As a direct and proximate result of Cass County's acts and omissions, Stratton suffered injuries, experience pain-and-suffering, and ultimately died.

131.   As a direct and proximate result of the acts and omissions described herein, Stratton suffered compensatory and special damages as defined under federal common law and in an amount to be determined by jury.

132.   Plaintiff is entitled to recovery of costs, including reasonable attorney fees, under 42 U.S.C. §1988.

133.   As a direct and proximate result of these wrongful acts and omissions, Stratton's mother Wendy guide a and his next of kin, have suffered pecuniary loss, including funeral expenses, loss of aid, counsel, guidance, advice, assistance, protection, and support in an amount to be determined by jury.

## **Prayer for Relief**

WHEREFORE, Plaintiff Wendy Guida in her capacity as the mother of Andrew Stratton, and as Trustee for the next of kin of Andrew Stratton, prays for judgment against defendants as follows:

134.   As to Count I, a money judgment against Defendants Schmidt, Boehm, McKnelly for compensatory, special, and punitive damages and punitive damages together with costs and disbursements, including reasonable attorney fees under 42 U.S.C. §1988 and prejudgment interest.

135.   As to Count II, a money judgment against Defendant Cass County for compensatory and special damages in an amount to be determined together with costs and disbursements, including reasonable attorney fees under 42 U.S.C. §1988 and prejudgment interest.

136.   As to Count III, a money judgment against Defendant Cass County for compensatory and special damages in an amount to be determined together with costs and disbursements, including reasonable attorney fees under 42 U.S.C. §1988 and prejudgment interest.

137.   For the appointment of a receiver or similar authority to ensure that Cass County properly train's and supervises as well as equips its deputies.

138.   For such other and further relief as this Court deems just and equitable.

**PLAINTIFF DEMANDS A JURY TRIAL AS TO ALL ISSUES OF FACT HEREIN.**

Dated this 12th day of February 2024.

By:     /s/Joseph L. Howard
        Joseph L. Howard, #22743
        DORNAN, TROIA, HOWARD,
        BREITKREUTZ, DAHLQUIST, & KLEIN PC, LLO
        1403 Farnam Street, Suite 232
        Omaha, NE 68102
        Telephone: (402) 884-7044
        Email: JHoward@DLTLawyers.com
        *Attorney for Plaintiff*